ATLANTIC COAST LINE RAILROAD COMPANY v.
MENARDIE L. MCINTOSH

198 So. 92
En Banc
Opinion Filed October 4, 1940
Rehearing Denied November 4, 1940

358

*John B. Sutton* and *Charles Cook Howell,* for Plaintiff in Error;

. *Evan Evans,* for Defendant in Error.

BUFORD, J.—In this case Mr. Justice BROWN has written an opinion in which the controlling principles of law involved herein are discussed and we concur in the reasoning and conclusions reached in that opinion, except as to requested charge No. 5 given as instructions to the jury by the Court on request of plaintiff. The charge is fully quoted in Mr. Justice BROWN's opinion and it is not necessary to restate it here.

Our conclusion is that the charge correctly stated the rule of law and that although it appears that the same principle was enunciated in the general charge of the Court, it did not constitute reversible error for the Court to give the requested charge.

We know of no rule which precludes a trial judge from instructing the jury concerning a particular legal principle and in doing so stating the correct principle in two or more different phrases.

It appears to us that the cases cited in the opinion by Mr. Justice BROWN sustain our view in this regard. Therefore, we reach the conclusion that the judgment should be affirmed.

It is so ordered.

WHITFIELD, CHAPMAN and THOMAS, J. J., concur.

BROWN, J., dissents.

Chief Justice TERRELL not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.

Brown, J. (dissenting).—This action was brought by the plaintiff, Menardie L. McIntosh, against the Atlantic Coast Line Railroad Company, to recover damages for personal injuries resulting from the alleged negligent operation of a railroad train belonging to the latter, operated by its servants, and engaged in interstate commerce, the plaintiff being them employed by defendant in such commerce. It is admitted that the provisions of the Federal Employer's Liability Act govern (45 USCA, Sec. 51-59; U. S. Comp. St., Secs. 8657-8665).

The pleas were the general issue and assumption of risk. The argument presents five grounds insisted upon as error to reverse: (1) The verdict is contrary to the weight of evidence; (2) the jury could not presume both that the engineer backed the train and that he backed it negligently; (3) question of assumption of risk was not fairly presented to the jury; (4) the jury did not take into consideration the plaintiff's contributory negligence, and (5) the giving of erroneous instructions to the jury, and the refusal of certain instructions requested by the defendant.

The plaintiff, who was the only witness who took the stand in behalf of the plaintiff, testified briefly to this effect:

The accident occurred in the switchyard of the defendant railway company at Palatka. The night was dark and there was a slow drizzling rain. The plaintiff was conductor, the crew consisting of the conductor in charge, a brakeman, engineer, fireman and flagman. They were engaged in removing a "cut" of cars from a siding. The conductor informed the engineer and brakeman of the train orders to remove 31 cars of sand from the Palatka siding. There were 32 gondola cars on the siding, one of which was to be left. The engineer pulled the cars slowly out to the main track, the brakeman stationed himself back in position to

relay to the engineer the conductor's signals, and the conductor checked the cars against a switch list as they moved slowly past him. (The brakeman said he stationed himself on top of the cars. The engineer and plaintiff testified that he was on the ground.) The last of the 32 cars on the siding was the undesired car. In response to the proper signal, given by the conductor and relayed by the brakeman to the engineer, the train was stopped for the purpose of uncoupling the undesired car. The plaintiff went between the cars, jerked the lift rod of the car he was cutting off and turned the angle cock on the car ahead of the one he was uncoupling. The train was "pulling off easy," so he parted the air hose to prevent it being pulled apart. The train pulled off about four feet. Air was leaking from the train line from the engine because the angle cock on the back car of the cut of cars was not completely closed. The angle cock was hard to turn, so the conductor set his lantern between the rails and took both hands to turn the angle cock to shut off the air completely. While so engaged, the train backed suddenly, catching the conductor's arm between the drawheads, so injuring it that it had to be amputated between the elbow and shoulder. Unable to reach his lantern, the conductor gave a "pull ahead" signal with his flashlight.

By rule of the company, it was the duty of the engineer to have his train remain stationary after a stop signal until a further signal was given. The plaintiff conductor testified that he gave no signal after the stop signal until the one given with his flashlight. Both the engineer and brakeman testified that the train was not backed, that the train stood still and did not move until the conductor gave the go-ahead signal to the brakeman which he relayed to the engineer. It was uncontroverted that when a car was uncoupled, the brakes set automatically and therefore the jury could infer that the last car could not roll ahead on to the

conductor. However, the engineer and brakeman testified that about an hour later, they went to the hospital to see plaintiff, who had been placed on the operating table, and that in reply to the engineer's question, "Mack, how in the world did it happen," the plaintiff replied: "I cut the car off and it rolled down on me. It is not your fault." Plaintiff testified that he had no recollection whatever of their visit or of any conversation whatever with them.

All of the crew knew of the conductor's purpose to uncouple the undesired car. They further knew of the duty on the part of the engineer to keep the train stationary after a stop signal until he received a further signal.

It is contended by the appellant that the court should have instructed the jury that the plaintiff could not recover, if the jury found that the train was backed, unless the jury found that the engineer and brakeman knew, or reasonably should have known, that McIntosh had gone between the cars. Under the facts here, it would have been gross negligence to back the cars, or move the train in any way, without a signal from the conductor. It would be a dangerous rule of law to make the duty to obey orders coming from a proper source turn on whether the person violating the rule had knowledge, or reasonably should have known, that such disobedience might be dangerous to a co-employee, especially where, as here, the engineer and brakeman knew that the conductor intended to cut off one of the cars, and had given a stop signal for that purpose. Such instruction was properly refused.

There was a sharp conflict between the testimony of the plaintiff and that of the engineer and brakeman as to the backing of the train, which was sufficient to present to the jury a question as to the credibility of the plaintiff's testimony as opposed to that of the engineer and brakeman. The trial judge who saw and heard the witnesses approved

the verdict by denying a motion for a new trial. Under these circumstances the appellate court is not warranted in reversing the judgment solely on the facts, in the absence of some showing that the jury must have acted on considerations outside the evidence, in returning the verdict that they did. The fact that the plaintiff below relied solely on his own testimony to support his contention in this case does not *per se* render the evidence insufficient as a matter of law to support the verdict there being nothing in the record to suggest that in thus accepting the plaintiff's testimony the jury were actuated by passion or prejudice or other considerations outside the evidence. Jacksonville Traction Co. v. Greene, 113 Fla. 316, 151 So. 523; Southern States Power Co. v. Pittman, 122 Fla. 758, 165 So. 893.

Plaintiff in error contends that "a trier of fact legitimately and properly can make only one presumption from proven facts." The generally accepted rule is that presumptions must be based on facts and not upon inferences or upon other presumptions. However, there is sound authority to the effect that inference may rest on inference to the extent that reason and the necessities of the case require it in the interest of justice. This is more apparent when the primary inference or presumption has the standing of a proved fact. If an inference or presumption is based on such evidence that it may reasonably be regarded by the jury as a proved fact, then although the evidence on which it is based may be circumstantial, such inference or presumption of fact may itself form the basis for another inference of fact. Virginian Ry. Co. v. London, 148 Va. 699, 139 S. E. 328, 1 Jones on Evidence (4th ed.) page 181. Here the plaintiff below testified that the train backed on him after he uncoupled the last car. In this he was contradicted by the engineer and brakeman. He also testi-

fied, and was not contradicted, that the brakes on the uncoupled car would be set by the uncoupling and it could not roll down on him. If, as is indicated by the verdict, the jury believed the plaintiff, it may therefore be taken as a proved fact, to the satisfaction of the jury, that the train backed on the plaintiff, and it was within their province to infer that if the train was backed, the engineer backed it. Taking this as a fact which the jury could reasonably infer, that the engineer backed the train, upon a study of the record of the evidence, it cannot be said that the jury were not reasonably justified in further inferring therefrom that the engineer was guilty of negligence in so doing. They might reasonably have inferred that this was mere negligence, rather than an intentional effort to inflict injury, which latter would have exculpated the defendant company from liability under the holdings in cases cited by plaintiff in error. Indeed, the court so charged the jury.

It is also contended that the court erred in not giving charges requested on the assumption or risk by the injured employee. The instructions given the jury on assumption of risk were quite full and comprehensive, and in our opinion, correct, and as favorable to the defendant as the law required, thus rendering the additional instructions which were requested unnecessary. Furthermore, we are not at all convinced that some of these instructions, so requested, were correct statements of the law applicable to the evidence in this case. The same might be said of some of the instructions requested on the subject of contributory negligence. The court's charge on that subject was in our opinion sufficient.

Contributory negligence is not an absolute defense under this Act, but as under our State statute, operates only to diminish the amount of damages recoverable. USCA 45,

Sec. 53, note 21. Of course, if the negligence of the plaintiff is the *sole* proximate cause of his injury, he cannot recover. The court correctly charged the jury on this subject, among other things, saying:

"The court charges you that when an employee of a common carrier or railroad is injured while the carrier is engaged, and while the servant is employed by the defendant, in interstate commerce, in any action for damages, such injuries due to negligence as alleged in the plaintiff's declaration, the right to recover cannot be defeated by showing or proving that the employee's negligence contributed in any degree to his injuries. In all such actions, the employee's contributory negligence merely diminishes the amount of his damages. The law applicable provides that the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of the negligence attributable to such employee."

It was said in New York, etc., R. Co. v. Niebel, 214 Fed. 952, 131 C. C. A. 248, referring to USCA 45, Sec. 53:

"This section has been interpreted to mean that the defendant is liable if through other employees it is guilty of any causative negligence, no matter how slight in comparison to that of the plaintiff, and that the total damages should be proportioned between the plaintiff and the defendant according to their respective fractions of the total negligence."

See also Louisville & N. R. Co. v. Grizzard, 238 Ala. 49, 189 So. 203.

Plaintiff in error contends that the verdict was excessive, but when the long life expectancy of the plaintiff is considered, together with the seriousness of his injury, we would

not be justified in holding the trial court in error for over-ruling this ground of the motion for new trial.

We now come to the consideration of the question which has given us most concern. The plaintiff in error contends that the following instruction given at the request of plaintiff in the court below was erroneous in that it singled out for special consideration the testimony of one witness:

"No. 5. The court charges you that it is the plaintiff's duty to establish his case by a preponderance of the evidence. This does not mean the greater number of witnesses, but means the greater weight of the evidence. Witnesses are not to be counted, but their testimony is to be weighed. Under the law, a claim can be establsihed by a single witness."

This instruction correctly states the abstract law. It was held by this Court in Jacksonville Traction Co. v. Greene, 113 Fla. 316, 151 So. 523, that:

"The maxim of the law is *'Ponderantur testes, non numerantur,'* witnesses are not to be counted, but their testimony is to be weighed. It is the general rule in civil cases that a claim or defense can be established by a single witness. 6 Jones on Evidence (2d ed.) page 4885. As an incident of their province to determine facts the credibility of witnesses is peculiarly a matter for the jury. Hubbard v. Rankin, 71 Ill. 129."

See also 3 Jones on Evidence (4th ed.) page 1682, Annotation, 93 A. L. R. 155, text 166.

Plaintiff in error contends that nothing could have better pointed McIntosh out to the jury as a crippled man standing alone, yet by himself able, if the jury thought so, to swing the verdict, than this instruction; that there are many portions of law, correct in the abstract, which have no place in a judge's charge to a jury; that in addition to its "un-

fairness" to defendant, this charge gave undue prominence to McIntosh's testimony and violated the rule laid down in Jacksonville Electric Company v. Adams, 50 Fla. 429, 39 So. 183, and Hall v. State, 78 Fla. 420, 83 So. 513, and Keigans v. State, 52 Fla. 57, 40 So. 886. In the case first cited the Court held that the trial court properly refused to give a charge which might have been correct as an abstract question of law, but which was not applicable to the facts of that case, and in that connection stated: "If there are several important issues, it is not proper to single out one of them as the controlling issue, and in this case it is evident that the issue presented in this instruction was not the only or controlling one." In the cited case of Hall v. State, this Court held that a requested instruction which is designed to direct the jury's attention to any particular witness or set of witnesses and to segregate from the entire body of the witnesses, or to separate any fact from all the material facts sought to be established, and bring such witness or witnesses or fact into prominence or importance, either for the purpose of disparaging the witness or strengthening the testimony, is erroneous and properly refused. In the Keigans case, *supra,* the Court held that a certain charge given by the trial court singled out and gave undue prominence to the testimony of the defendant and to the fact of his interest in the result of the trial which the court held was so framed as to unduly impress the minds of the jury to the prejudice of the defendant, the instruction being mandatory that the jury must remember the interest that the defendant *"necessarily must* have in the result of the trial." The exact question we have here was not presented in the cases thus cited, though they do outline a general principle.

In this case the trial court, in the first paragraph of the general charge, made a statement to the jury, the substance of which is customarily and properly given, embraced in the

general charge given by our trial courts in most all cases. We quote this in order to determine whether or not the giving of Charge No. 5, requested by the plaintiff, and hereinabove quoted, could be held harmless to the defendant when considered in connection with the Court's general charge. That portion of the general charge referred to was as follows:

"You should, if you can, take the testimony of all of the witnesses and so reconcile any apparent differences there may be as to make them all speak the truth. However, if you cannot do this, and you find that there is an irreconcilable difference as to a material question, then it is your duty and province, and yours alone, to decide which witness or set of witnesses you believe to have testified truthfully in the matter, and make your verdict upon the testimony you believe to be true. All this you should do fairly, carefully, and impartially under your oaths as jurors sworn and impaneled to try this case; and, having done so, base your verdict on the testimony you believe to be true.

"In considering the weight you will attach to the testimony of any particular witness, you may take into consideration his manner on the witness stand during the giving of his testimony, as well as his position at the time of the event testified about; any interest or bias that he may have in the result of his testimony; any discrepancies you may find in his testimony, or between his testimony and the testimony of other witnesses you believe to have testified truthfully; any corroboration of his testimony that you may find in the testimony of other witnesses whom you may believe to have testified truthfully, or in the facts and circumstances testified about. In fact, all of the circumstances surrounding the witness and bearing upon his credibility, are proper for you to take into consideration in arriving at the weight you will attach to his testimony."

Also in its general charge the court had this to say:

"In cases of this nature, the measure of evidence is what is known as a preponderance of the evidence. That means the greater weight of evidence, and not necessarily the greater number of witnesses."

This last quoted portion of the court's charge was we think correct, and sufficient to cover the point which was in our opinion given undue prominence by charge No. 5, hereinabove quoted, and which latter plaintiff in error insists constituted reversible error. By reference to the Annotation in 93 A. L. R. at page 166, it appears that most of the courts who have dealt with this subject have held that an instruction to the effect that the preponderance of evidence or weight of evidence does not *necessarily* mean or depend on a greater number of witnesses on one side or the other, is a proper instruction. It also appears that some of the courts hold that the omission of the word "necessarily" before the word "mean," or the words "depend on," according to which of these particular terms are used, is fatally erroneous, while other courts take a different view. There is a conflict in the decisions of the states which have considered that question, on this particular point. Our view is that the instruction on this subject as contained in the court's general charge above quoted is upheld by the weight of authority and was not subject to any objection. Indeed, plaintiff in error made no objection to that portion of the court's charge.

Undoubtedly plaintiff's requested instruction No. 5 above quoted, which was given by the court to the jury, makes a correct statement of the abstract law, as shown by the quotation from Jacksonville Traction Company v. Green, *supra,* which quotation however, was followed by the following paragraph in the opinion of this court in that case:

"The necessary meaning of the rule last stated is that the

plaintiff's uncorroborated testimony alone, if reasonable on its face, and believed and accepted by the jury as true, can carry the burden of proof unless it is made to appear that there was adduced at the trial contradictory evidence opposed thereto, so strong and positive that it may be said that the verdict of the jury approving the single witness is clearly, on the whole record, against the manifest weight of the evidence considered as an entirety. A. C. L. R. R. Co. v. Alverson, 95 Fla. 73, 116 Sou. Rep. 30; Williams v. State, 100 Fla. 814, 129 Sou. Rep. 456; Wilson v. Maddox, 97 Fla. 499, 121 Sou. Rep. 805. For a detailed statement of the limitations which are recognized on the application of the foregoing rule see the opinion of this Court in Callaway v. State, 112 Fla. 599, 152 Sou. Rep. 429, wherein Mr. Justice ELLIS has stated the scope of application and limitations upon the rule which this Court recognizes and follows."

Turning to the opinion of Mr. Justice ELLIS in Callaway v. State, referred to in the opinion in Jacksonville Traction Co. v. Green, we find that the defendant was convicted in a case where the State depended upon the testimony of a single witness, a woman. This Court held that the evidence was sufficient to sustain the charge "unless the testimony of the woman, measured by a doctrine which this Court has applied in at least two or three cases, inherently lacks in coherence and the probability of truth, so as to render it unsafe and unreliable as the basis for conviction as a matter of law." The final holding of the court in the Callaway case on rehearing was that the judgment should be reversed and a new trial awarded on the authority of two cited cases wherein it was held that where evidence supporting conviction for felony bears such earmarks of falsehood and uncertainty as to amount to a legal insufficiency of the evidence to support the verdict, a new trial should be awarded.

While the question presented is not free from difficulty, I am of the opinion that charge No. 5, above referred to, given by the court, was erroneous because the word "necessarily" is omitted before the word "mean" and also because the last two sentences of the charge, especially the last sentence, tended to give undue prominence to the testimony of a single witness, that is, in this case, the plaintiff who alone testified in his behalf. The last sentence of the charge, reads: "Under the law a claim can be established by a single witness," might have been rendered harmless and indeed correct if there had been added the words "provided the testimony of such witness is not so inherently lacking in probability or truth as to render it unsafe and unreliable as a basis for the establishment of the claim." This I think would bring the charge, on this point, within rule laid down in Jacksonville Traction Company v. Green as modified in application by the opinion in Callaway v. State, *supra*.

I repeat that what the court had to say on this subject in its general charge was, in my opinion, sufficient, and when the court gave in addition thereto, charge No. 5, requested by the plaintiff, such charge as given was not only erroneous, as above pointed out, but tended to give undue prominence to the testimony of the plaintiff in this case.

The general charge of the learned circuit judge was in my judgment a very fair, able and comprehensive one, but on account of the single error above pointed out, which in this case might well have been prejudicial to the defendant, I think the judgment should be reversed and the cause remanded for a new trial.