HENRIETTA MOORER, et al., v. PUTNAM LUMBER COMPANY, Shamrock, Florida, et al.

12 So. (2nd) 370                 January Term, 1943

March 9, 1943                      Division A

*Wendell C. Heaton,* for appellants.

*Marks, Marks, Holt, Gray & Yates,* for appellees.

PER CURIAM:

The record in this case discloses that Ernest Moorer on May 18, 1942, was accidently killed when an employee of the Putnam Lumber Company, at Shamrock, Florida. He was a colored man about 35 years of age and unmarried. He was earning $14.00 per week and had worked only a day or so when meeting his tragic death. Henrietta Moorer, his mother, claimed compensation as a dependent under the Workmen's Compensation Act. Testimony was taken and her claim was by the deputy commissioner denied. The decision of the deputy commissioner was reviewed on appeal and affirmed by the Florida Industrial Commission. An

appeal to the circuit court was perfected and the order of the commission was affirmed on October 22, 1942. An appeal therefrom by the claimant (appellant) has been perfected to this Court.

The question for decision is whether or not the testimony adduced established dependency within the meaning of our statutes and decisions. The rule as to the dependency enunciated by this Court in the case of Panama City Stevedoring Co., Inc., v. Padgett, 149 Fla. 687, 6 So. (2nd) 822, is viz:

". . . The decided current of opinion on this point is to the effect that the question of who are dependents is one of fact to be determined by the circumstances of the case. It is settled law that dependency is not supported by moral or statutory obligation of the child to support the parent. It must be shown that the claimant is from physical or mental incapacity or lack of means, dependent on the deceased for support, that actual and substantial support must have been received by claimant from deceased, that such support must be shown to have been made regularly with reasonable expectation to be made in the future and that casual gifts at irregular intervals will not support a claim on dependency."

Under the rule, *supra,* actual dependency must be established at the time of the injury and assistance or contributions by the decedent is not required to be in the form of money, but gifts of the necessities of life are sufficient to meet the requirements of our controlling statutes. Schneider on Workmen's Compensation Law, Vol. II (2nd) Ed. par. 337, p. 1195, treating the question of dependency, in part, said:

"Dependency being a question of fact, at least until the facts are found, and the facts as varied as the number of cases, each case must be decided upon its own facts. The first question to be determined is whether or not the claimant suffered loss in respect to his or her support or maintenance. This being found in the affirmative, it is then necessary to determine whether or not the claimant was entitled, legally or morally, to consider the contributions received from deceased as a part of his or her necessary livelihood; that is, whether such contributions formed a part of the sort of support to which the claimant, within considerable radius of

reason; was entitled. While no exact standard of living can be fixed to a certainty for any given class, still some standard is necessary. If a janitress expended all the contributions received from a son on a wardrobe of silks, no one would likely contend that she was entitled to do so, and that such contributions were a necessary part of her support, at least not to the full amount of the contributions. On the other hand, a little more latitude might be allowed a stenographer, or other persons whose employment or station in life require better clothes . . . ."

Section 440.16 Fla. Stats. 1941, provides that if death results from an accident within one year, or there follows continuous disability resulting from the accident within five years thereafter, the employer will pay designated sums to the persons named. Subsection (e) of Section 440.16 provides for payments to the parents.

The undisputed testimony discloses that Ernest Moorer, at the time of his death, was working for the Putnam Lumber Company at Shamrock. He was receiving at the time of his death on May 18, 1942, for his labor or services compensation based on an average weekly earnings of $14.00 per week for 40 hours service, or $2.00 per day of eight hours labor per day. A stipulation in the record viz:

"The carrier and the attorney for the claimant stipulate that the accident in question arose out of and occurred in the course of employment. Also the injury resulted in the death of Ernest Moorer on May 18, 1942. It is also stipulated that the average weekly wage was $14.00."

The parents of the deceased separated about 25 years ago. The age of the deceased at that time is estimated at from 7 to 10 years. He was raised by his mother (claimant here), and began work at an early age. He was reared at St. George, Dorchester County, S. C. The claimant now lives at St. George. The deceased is shown to have worked from place to place where employed and good wages were obtainable. The testimony shows that the mother (claimant) owns a hut and one acre of land on the outskirts of St. George; has a garden, pigs, chickens, etc., and has lived there with her two daughters—one being practically an invalid—while

the other works about the county and receives $2.00 per week for her labor.

The claimant, in part, testified viz:

"Q. Tell us whether or not Ernest ever contributed to your support? A. Yes, sir, he did. He was the only help I had. Q. When did he first start contributing to your support? About how old was he? A. When he was little we all picked cotton and did the best we could. After he got about 15 or 16 or 17 he started working in a mill at Batton, Dorchester Lumber Company. . . . Q. When he first started to work at Batton you testified that he was about 15 or 16 years old? A. Yes. Q. Did he start then contributing to you? A. Yes, sir. Q. Bringing his money in? A. Yes, sir. Q. Testify now from that time on whether or not he contributed to your support; that is, the money he made, did he give you a portion of it to live on? A. Yes, sir, he did. Q. Testify whether or not his contributions to your support lasted right on through the years up until the time of his death? A. You mean did he give me anything up to the time of his death? He surely did, yes sir. Q. Just before he died was he contributing to your support? A. Yes, sir, about 2 weeks— Q. Two weeks before he died. What do you mean? A. Just about two weeks before he died he sent me some money. Q. About how much did he send you a month, Henrietta? A. Well, just to put it all together, sometimes about $15.00 or $20.00 a month. Q. Fifteen or twenty dollars a month? A. Yes. Q. Did he mail it to you? A. Yes, just put it in a letter and sent it to me like that. Q. Would it be bills or silver money? A. No, not silver—paper money, I calls it. Q. How old are you, now Henrietta? A. I am around sixty-five (65). Q. How is your health? A. Very poor. I am not able to do anything at all. The doctor tells me not to pick up the broom. . . . Q. You never married again? A. No, I have never had the idea. . . . Q. Have you got any other source of livelihood or living than the support you were getting from your son? A. No, that is all the support I had. Q. Of your own knowledge, did you ever know of your son, Ernest Moorer, having ever married? A. No. Q. Do you know whether or not he left any children? A. No."

The record shows an examination of the claimant by Mr. Coffee, Mr. Guyton, and by her counsel, Mr. Parler, but the above quoted testimony stands unshaken and without the least modification.

A colored undertaker, Walt Christie, residing at St. George, testified that he was acquainted with the parents of decedent and about 25 years ago Bill Moorer, the decedent's father, left his family at St. George and moved to Savannah and married another woman. He knew the deceased and his testimony established dependency of the claimant on her son. It is viz:

"Q. Do you know of your own knowledge whether or not Ernest Moorer ever contributed to his mother's support? A. Yes, sir, I know he has. Q. Tell us just what you base that on? A. On several occasions she came to me to borrow money until he could send her some—she was expecting it, and in a few days, 8 or 10, she would come and pay me back. They were expecting her to die four or five years ago and they were all there at home. And when he started to leave, he left around thirty or forty dollars ($30 or $40), and besides that he bought some groceries. Q. About how long before Ernest died was the last time you recall Henrietta ever mentioning to you about borrowing some money from you—telling you she was expecting money from Ernest? A. Around four weeks, maybe a little over. Q. Did she ever tell you about how much she was expecting to get from him? A. She said she was expecting to get around $10.00 or $15.00. That was what he usually sent her."

On cross examination the testimony of the witness was, in part, shaken or discredited.

The only testimony offered in opposition to the claim was that of Henry J. Dixon, manager of the hotel for colored people owned by the Putnam Lumber Company at Shamrock. His testimony consisted of statements made to him by the deceased over a period of three days prior to his death. The testimony of this witness throws but little, if any, light on the controversy.

Florida's Workmen's Compensation Act (Section 440.01-

440.57, Fla. Stats. 1941) fails to define dependency and to frame an exact definition is extremely difficult.

The California courts hold that the establishment of dependency is not dependent on whether or not the maintenance or contributions were voluntary or gratuitous, legal or moral, and is measured by the analogies of the common law. See Schneider on Workmen's Compensation Law, Vol. II (2nd Ed.), pp. 1194 and 1196. The New York courts define dependency in law as where one sustains another or relies for support upon the aid of the other; who looks to another for support or relies upon another for reasonable necessities consistent with the claimant's position in life; an actual dependency support consistent with the dependent's position in life. Actual dependency must be shown and it is not sufficient to show an expectancy of future contributions; and at page 1206 (Schneider supra) dependency has been defined by the courts in this country and England to mean one dependent for the ordinary necessities of life and that the contributions were relied upon by the dependent for his or her means of living, judging this by the class and position of the life of the dependent.

The evidence discloses that the claimant (mother) owns an acre of land on which is situated a hut in which she lives. She was around 65 years of age. She had a garden, pig or two, chickens, and was unable to work. She was without an income. Living with her was an invalid daughter and another daughter who earned $2.00 per week. She had been deserted by her husband. Experience and observation impels the conclusion that the claimant could not sustain life from the profits, if any, coming from her chickens, garden and pigs. She has lived in this hut for about 25 years and is now approximately 65 years of age and in bad health. Her uncontradicted testimony is that her deceased son has sent money to her at regular intervals from his wages, not only shortly prior to his death, but since his early manhood.

The burden of proof was on the claimant; the relation of mother and son; the death of the son in the course of his employment; the amount of weekly wages received is admitted on the record. The further burden of establishing by

competent testimony: (a) dependency and contributions by the deceased to the claimant at the time of death rested on the claimant. It is generally recognized that these several issues must be established by the testimony and decided by the Court on the facts involved in each controversy. Subsection 14 of Section 440.01, Fla. Stats. 1941, defines a parent to include step-parent and parents by adoption, parents-in-law, and *any person* who for more than three years prior to death of the deceased employee stood in the place of a parent to him and was dependent on the injured employee.

The burden is on the appellant bringing her case here to show error in the record; or, to state it differently, a case coming to this Court on appeal is presumed to be free from error. In Firestone Auto Supply & Service Stores v. Bullard, 141 Fla. 282, 192 So. 865, we held, in this class of litigation, that a circuit court considers the case on the record and enters such an order as may be supported by the facts and the law. The findings as made by the Florida Industrial Commission shall by the circuit judge be given about the same weight and consideration which a chancellor gives to the findings of law and fact made by a special master. See Forehand v. Manly, 147 Fla. 287, 2 So. (2nd) 864.

Under our judicial system disputes and conflicts in the testimony are for the jury under appropriate instructions. Atlantic Coast Line R. Co. v. McIntosh, 144 Fla. 356, 198 So. 92. The findings of a chancellor on disputed questions of fact on appeal will not be disturbed if substantial testimony can be found in the record to support the challenged ruling. See Kent v. Knowles, 101 Fla. 1375, 133 So. 315; Farrington v. Harrison, 95 Fla. 769, 116 So. 497. In the case at bar disputes and conflicts do not appear in the testimony and there is not substantial testimony in the record to support findings for the appellee. In the record is sufficient testimony to support a finding for the claimant which the law and the evidence clearly justifies, and it was error to rule otherwise.

It is our conclusion that the evidence adduced on the part of the claimant brings her claim within the statute as a dependent and the evidence shows that contributions for the time prescribed by the statute had been made to the claimant

as a dependent by the deceased, and accordingly the judgment of the circuit court is reversed for further proceedings in the lower court not inconsistent with this opinion.

It is so ordered.

BUFORD, C. J., TERRELL, CHAPMAN and ADAMS, JJ., concur.