SHIVERS, Judge.
The appellant/claimant,. Rebecca Crews, appeals an order of the judge of compensation claims (JCC) denying her claim for workers’ compensation death benefits pursuant to section 440.16, Florida Statutes (Supp.1986). We affirm for the reasons set out below.
The record on appeal indicates that Jimmy Crews, an employee of appellee/De-partment of Transportation, was involved in a compensable accident on October 20, 1986 which resulted in an injury to his knee. In the two years following the accident, Crews underwent a total of six surgeries, but continued to deteriorate both physically and mentally. On November 14, 1989, he committed suicide. It is undisputed that the decedent and the claimant had been living together for over 16 years at the time of the 1986 accident, but that they were not legally married until January 16, 1988.
Claimant subsequently filed a claim for workers’ compensation death benefits pursuant to section 440.16. After a hearing on that issue, the JCC entered an order finding that the decedent’s suicide was causally related to his depression following the operations resulting from his 1986 injury, and that he was devoid of judgment sufficient to preclude forming a willful intent to in *292 jure himself. His suicide was thus found to be compensable. The JCC denied Rebecca Crews’ claim for death benefits, however, on the basis that she and the decedent were not legally married at the time of the October 20, 1986 accident, finding the definition of “spouse” contained in section 440.-02(19), Florida Statutes, to require that the marriage exist both at the time of the work related accident and the time of death in order for death benefits to be paid to a surviving spouse. We agree that the plain language of that section, read in pari materia with the other applicable sections of Chapter 440, supports the conclusion reached by the JCC.
Section 440.16, Florida Statutes (Supp. 1986) provides, in part, as follows:
(1) If death results from an accident within 1 year thereafter or follows continuous disability and results from the accident within 5 years thereafter, the employer shall pay:
[[Image here]]
1. To the spouse, if there is no child, 50 percent of the average weekly wage, such compensation to cease upon the spouse’s death or remarriage, (emphasis supplied)
Section 440.16(6) provides:
Relationship to the deceased giving right to compensation under the provisions of this section must have existed at the time of the accident, save only in the case of afterborn children of the deceased. (emphasis supplied)
Further, section 440.02(19) defines the term “spouse” as:
only a spouse substantially dependent for financial support upon the decedent and living with the decedent at the time of the decedent’s injury and death, or substantially dependent upon the decedent for financial support and living apart at that time for justifiable cause, (emphasis supplied)
The term “time of injury” is defined in section 440.02(20) as “the time of the occurrence of the accident resulting in the injury”; “injury” is defined in section 440.-02(14) as “personal injury or death by accident arising out of and in the course of employment ... ”; (emphasis supplied), and “accident” is defined in section 440.-02(1) as:
only an unexpected or unusual event or result, happening suddenly. A mental or nervous injury due to fright or excitement only, or disability or death due to the accidental acceleration or aggravation of a venereal disease or of a disease due to the habitual use of alcohol or narcotic drugs, shall be deemed not to be an injury by accident arising out of the employment. Where a preexisting disease or anomaly is accelerated or aggravated by an accident arising out of and in the course of employment, only acceleration of death or acceleration or aggravation of the preexisting condition reasonably attributable to the accident shall be compensable, with respect to death or permanent impairment.
Last, the term “death” is defined in section 440.02(8) as “only death resulting from an injury.”
The claimant’s argument on appeal is based on her contention that the term “accident” in section 440.16(6) may refer not only to the employee’s initial, work-related accident, but also to any subsequent intervening accident which contributes to the employee’s death such as, in the instant case, the gunshot to the decedent’s head. We find no support in any of the statutes or the applicable case law for such a conclusion. First, although claimant contends that suicides have been treated by the supreme court as subsequent intervening accidents, the cases cited by claimant do not support her position on appeal and, in fact, support the opposite conclusion. In Jones v. Leon County Health Department, 335 So.2d 269 (Fla.1976), the supreme court quoted with approval the following language from Whitehead v. Keene Roofing Co., 43 So.2d 464 (Fla.1949), which set out the guidelines for recovery in cases where an employee takes his or her life as a result of an injury sustained in the course of employment:
“The difficulty inherent in proving that one who kills himself by his own hand does so because of injuries sustained in *293 an accident, and as a direct and proximate result thereof, undoubtedly accounts for the diversity of opinion on this question among the courts of this country. And, clearly, in a proper case, the provisions of Section 440.09(3), supra, should be given full force and effect so that industry should not have to carry the burden of compensating for a death for which it was in no wise responsible. But we are not persuaded that the fact that a workman knew that he was inflicting upon himself a mortal wound will, in all cases, amount to a ‘wilful intention’ to kill himself, within the meaning of the statute. We believe that in those cases where the injuries suffered by the deceased result in his becoming devoid of normal judgment and dominated by a disturbance of mind directly caused by his injury and its consequences, his suicide cannot be considered ‘wilful’ within the meaning and intent of the Act.
“There is no force to the argument, propounded by some courts, that the act of suicide is an independent intervening cause of the death of the workman, thus breaking the chain of causation from the injury to the death of the deceased. While it may be an independent intervening cause in some cases, it is certainly not so in those cases where the incontrovertible evidence shows that, without the injury, there would have been no suicide; that the suicide was merely an act intervening between the injury and the death, and part of an unbroken chain of events from the injury to the death, and not a cause intervening between the injury and death. See City of Lakeland v. Burton, 147 Fla. 412, 2 So.2d 731.”
335 So.2d at 271-272 (emphasis supplied). The underlined language shows not only that a compensable suicide does not constitute an independent intervening act or accident, but also makes a clear distinction between the decedent’s “injury” and his “death,” and labels suicide as an “act” occurring between the injury and death.
In the Jones case itself, the supreme court found that the decedent had contracted tuberculosis as a result of his employment with the Leon County Health Department as administrator of their tuberculosis program, that the tuberculosis resulted in a condition of depression, and that the depression resulted in suicide — thus forming a causal connection between the tuberculosis and the suicide. Likewise, in the instant case, the JCC found that claimant had injured his knee in a work-related accident, that his resulting knee problems had caused depression, which in turn resulted in his suicide — thus forming a causal connection between the original knee injury and his ultimate death. In neither case can it be said that the suicide itself was an independent intervening “accident” which “caused” the death, however, since, had decedent’s death not been found causally connected to the original industrial accident and resulting injury, the death would not be compensable.
Further, in order to support claimant’s position, the term “injury” used in section 440.02(19) would also have to refer both to the injury resulting from the initial work-related accident and, in the instant case, to the self-inflicted gunshot wound which directly caused the decedent’s death more than three years later. Neither section 440.02(20) nor section 440.02(14) can support such a conclusion, particularly the latter section, which clearly requires an injury to arise out of and in the course of employment. Although the decedent’s suicide was found to be causally related to his depression following the work-related knee injury, there is no question that the suicide itself did not arise out of and in the course of his employment.
As this court held in Wise v. E.L. Copeland Builders, 435 So.3d 339 (Fla. 1st DCA 1983):
The principal rule is that the dependent relationship must have “existed at the time of the accident,” Section 440.16(6), Florida Statutes (1979), and not at some later date (e.s.). Accord Paul Spellman, Inc. v. Spellman, 103 So.2d 661 (Fla. 2d DCA 1958); Moorer v. Putnam Lumber Company, 152 Fla. 520, 12 So.2d 370 (1943). Whether an individual is dependent upon a deceased employee is therefore a question of fact to be determined *294 by the circumstances existing at the time of the industrial accident. See Wright v. Commercial Metals Co., 429 So.2d 826 (Fla. 1st DCA 1983).
435 So.2d at 342 (emphasis in original). And, as this court held in Evergreen Sod Farms, Inc. v. McClendon, 513 So.2d 1311 (Fla. 1st DCA 1987), approved in Tarver v. Evergreen Sod Farms, Inc., 533 So.2d 765 (Fla.1988):
Although the workers’ compensation statutes are to be liberally construed to effect coverage for the injured employee, “[wjorkmen’s compensation is entirely a creature of statute and must be governed by what the statutes provide, not by what deciding authorities feel the law should be.” J.J. Murphy & Son, Inc. v. Gibbs, 137 So.2d 553, 562 (Fla.1962).
513 So.2d at 1312-1313.
In sum, we find that section 440.02(19) clearly requires the claimant to have been the decedent’s spouse, living with and financially dependent upon him, both at the time of the initial work-related accident in October 1986 and at the time of the decedent’s death in November 1989. That section, read in pari materia with the clear language of the above referenced sections, mandates affirmance of the JCC’s denial of benefits.
AFFIRMED.
ZEHMER and WEBSTER, JJ., concur.