MRS. ESTHER GIERE, appellant, v. AASE HAUGEN HOMES, INC., and LIBERTY MUTUAL INSURANCE COMPANY, appellees.

No. 52325.

December 13, 1966.

Strand & Kiener, of Decorah, for appellant.

Swisher, Cohrt, Swisher, Finch & McCann, of Waterloo, for appellees.

Becker, J.—This is an appeal from judgment by the district court affirming the industrial commissioner's review decision that claimant did not sustain a personal injury arising out of and in the course of her employment. We affirm.

At the initial hearing the deputy industrial commissioner found for claimant, determined the disability to be 10 percent and made an award accordingly. Defendants appealed to the commissioner and produced additional testimony. The commissioner reversed the deputy's award, finding that claimant had not met her burden to prove causal connection between the acts of lifting occasioned by her employment and the diaphragmatic hernia from which she was suffering. Upon appeal the district court held:

"Since the Commissioner's finding was that the claimant failed to establish by a preponderance of the evidence that the diaphragmatic hernia she was found to be suffering was causally connected to acts of lifting in the employ of Aase Haugen Homes, Inc., and since that finding is sustained by substantial evidence and reasonable inference drawn therefrom, this Court feels that the Commissioner's decision denying benefits must be and is hereby affirmed."

The validity of this judgment is now before us.

Claimant testified that she worked as a supervisor at the Sunset Lutheran Home, a custodial home for the elderly, operated by defendant Aase Haugen Homes, Inc. She alleged that on August 29, 1961, while lifting a patient, she suffered a diaphragmatic hernia. She told of lifting or helping to lift a 195-pound patient at least twice on that date. After the lifting incidents she felt a stinging in her chest which persisted and kept her awake after she retired. She then experienced almost constant pain for three weeks to a month. Before August 29th she had not had such pains that she could recall. She contacted a Doctor Miller concerning the pains and he treated her until January 2, 1962. He did not testify.

In January Mrs. Giere had a week long examination by Doctor Sivertson at Gunderson Clinic, LaCrosse, Wisconsin. After taking a very detailed history and performing certain tests he diagnosed several ailments including diaphragmatic hernia. The history is too extensive for detailed repetition here but some significant statements will be noted. The clinical record shows the following: "Admits to *all* classical symptoms of diaphragmatic hernia-nocturnal coughing, choking, dysphagia

and easy regurgitation for long time *but worse last 5 months.*" (Emphasis in history).

The history also shows that claimant, then age 63 was 5 feet 6 inches tall, weighed 200 pounds and had weighed 10 pounds more the week before, had been relatively constipated all of her life, had heartburn of five years' duration, hiccups on the average of once a week at the dinner table since October 1961, wheezing in respiration during the past five years following pneumonia which she had twice in the same winter five years before. She had given normal birth to three children. She had previous surgery including removal of the gallbladder.

Doctor Sivertson described an esophageal hernia as a rupture of the diaphragm. The stomach passes up through the opening where the food pipe normally passes through the diaphragm and into the chest cavity. The valve which prevents food from leaving the stomach then does not function properly. He indicated that generally speaking this type of hernia is classified as a traumatic hernia. It may be congenital. There is also a possible connection between vomiting and hernia, between constipation and hernia. Doctor Sivertson did not think prior removal of the gallbladder, nervous tension or the irritable colon he found to be present in claimant, had anything to do with this hernia.

Doctor Sivertson testified that Mrs. Giere's hernia was not congenital, that trauma may produce or aggravate this type of hernia, that it is possible that this esophageal or hiatus hernia occurred in August 1961 and it is possible this type of hernia could have been caused by lifting. In a letter, admitted without objection, Doctor Sivertson also said:

"I do not know the cause for the diaphragmatic hernia. It evidently was not present when the stomach was X-rayed five years previously at Wisconsin General Hospital. Therefore, it must have developed between then and the time of its discovery here. The symptoms referable to it indicated that it was very likely present for many months prior to January, 1962; I am unable to pinpoint the exact date the rupture developed. It is possible that it developed in the fall of 1961.

"I think it is reasonable to assume that her work at the

nursing home may have brought the rupture on. I think we can state that the work at the nursing home definitely aggravated the condition, as bending, stooping, and lifting produced regurgitation of stomach contents into the throat and bronchial tree."

Defendant's medical testimony confirmed the existence of the hernia but contested causal connection. Dr. Richard A. Eckberg examined claimant for defendants. He agreed that she had a small hiatus hernia but stated that such hernias are very rarely due to trauma. He stated that such hernias are frequently found in women over 50; the predisposing cause is increased abdominal pressure; such pressure may come from pregnancies, bronchitis, constant coughing, constipation, and being overweight. It will be noted that most of the causative factors relating to pressure are present in Mrs. Giere's history. Doctor Eckberg concluded that this lady's hernia was the result of congenital weakness and had been present for a number of years as indicated by the five-year history of heartburn.

Based primarily on these facts the deputy industrial commissioner found for claimant on the grounds that while this claimant suffered from numerous complaints, the claimant's doctor looked to the period of late summer and early fall of 1961 to explain the existence of the hernia. He felt he could not assume that the hernia existed prior to the events of August 1961. This, with the medical evidence that the hernia could have resulted from the strain and lifting of August 29, 1961, resulted in declaration of compensable injury.

On review plaintiff added to the foregoing evidence the deposition of Doctor Wilson who testified that: "There is a possibility that a lesion of this kind could be caused as a result of trauma." Defendants added the testimony of Dr. Herman J. Smith. In the words of the court reporter, the shorthand notes of Doctor Smith's testimony were lost, strayed or stolen. However, the commissioner's notes were preserved. These notes indicate that in response to a hypothetical question Doctor Smith stated it is possible that a traumatic incident could be causative of a hernia but there was not enough evidence to say probable in this case.

Because the evidence is not transcribed Doctor Smith's testimony cannot be reviewed in detail but claimant does not argue that the commissioner incorrectly restated that testimony. Based on the evidence from the initial hearing, and the evidence presented at the review, the commissioner found for the defendants.

I. Under our Iowa Code, 1966, section 86.24, review by the industrial commissioner of his deputy's decision is de novo. He may affirm, modify, reverse or remand for further findings. The parties on appeal to the commissioner may, and in this case did, on proper notice, produce additional testimony. Jarman v. Collins-Hill Lbr. & Coal Co., 226 Iowa 1247, 286 N.W. 526. The rule controlling the appeal from the commissioner's decision to the district court and thence to this court is, of course, radically different. In such appeal the review is not de novo and the findings of the commissioner have the force and effect of a jury verdict. This is true even though the court might have arrived at a different conclusion. Olson v. Goodyear Service Stores, 255 Iowa 1112, 125 N.W.2d 251.

The claimant had the burden to show by a preponderance of the evidence that the condition complained of was causally connected to the injury received in the course of employment. Yount v. United Fire & Cas. Co., 256 Iowa 813, 129 N.W.2d 75.

It is the duty of the commissioner to determine where the preponderance of evidence lies in compensation proceedings. Flint v. City of Eldon, 191 Iowa 845, 183 N.W. 344; Jones v. Eppley Hotels Co., 208 Iowa 1281, 227 N.W. 153. It is not often a party who had the burden of proof establishes his claim as a matter of law. Bodish v. Fischer, Inc., 257 Iowa 516, 133 N.W.2d 867.

In reviewing the commissioner's finding we consider the evidence in the light most favorable to claimant, Volk v. International Harvester Co., 252 Iowa 298, 106 N.W.2d 649, but his findings will be liberally construed to uphold rather than defeat his decision. Nicks v. Davenport Produce Co., 254 Iowa 130, 115 N.W.2d 812.

■ II. The commissioner, after a careful review of the evidence, stated:

"From the entire record it appears that the claimant had symptoms and complaints indicative of a diaphragmatic hernia for many years before going to work at the defendant's Home. * * *

"In light of the evidence indicating that the claimant had trouble with her digestive system before she lifted on August 29, 1961, lack of testimony that she was having significant trouble thereafter until December, and that medical testimony of only a possible causal connection between lifting and the diaphragmatic hernia, there is insufficient competent evidence to support an award."

The commissioner's ultimate finding was couched in negative language; i.e., "That the claimant has failed to establish by a preponderance of the evidence that the diaphragmatic hernia she was found to be suffering was causally connected to acts of lifting in the employ of Aase Haugen Homes, Inc." Both in the form of the finding and the issues raised this case is similar to Bodish v. Fischer, Inc., supra. We there said (page 519 of 257 Iowa):

"Claimant, of course, had the burden of showing by a preponderance of the evidence before the commissioner that he suffered the claimed injury or disease as a result of his contact with spilled ammonia while working at defendant's plant, and our question is not whether there is sufficient evidence to warrant a decision the commissioner did not make, but whether there is sufficient evidence to warrant the decision he did make."

In that case the commissioner also couched his decision in negative terms stating that claimant had failed to establish, by a preponderance of the evidence, the industrial incident as a cause of dermatitis. We affirmed.

Taken alone the commissioner's statement here that there is insufficient evidence to support an award is a conclusion of law, not a finding of fact. It is conclusion with which we might well disagree. But taken with the review of the evidence contained in the judgment we believe the statement was intended to be, and in fact is, a finding that the evidence was insufficient

1072

to convince the trier of the facts under the preponderance of evidence rule.

Reasonable minds could, and in fact did, disagree as to whether the evidence fairly showed a causal connection between the injury and the hernia. On substantially the same evidence the deputy and the commissioner reached opposite conclusions. Since it is the commissioner's decision that we review here, we must affirm.

III. Claimant's principal contention is that the industrial commissioner erred in applying an unreasonable rule of evidence concerning causation thus giving plaintiff an erroneous and greater burden of proof. But this does not appear from the record. The sentence in the commissioner's decision to which claimant directs her attack is: "[Medical] testimony indicating probability or likelihood of such causal relation is necessary." Out of context this quote would be erroneous. Read with the entire paragraph in which it appears it states the correct rule of law.

"Medical testimony that it is possible a given injury was the cause of subsequent disability, or 'could have' caused it is insufficient, standing alone, to generate a fact question. Testimony indicating probability or likelihood of such causal relation is necessary."

In arguing this proposition claimant cites Rose v. John Deere Ottumwa Works, 247 Iowa 900, 76 N.W.2d .756, Nicks v. Davenport Produce Co., 254 Iowa 130, 115 N.W.2d 812, and Bradshaw v. Iowa Methodist Hospital, 251 Iowa 375, 101 N.W.2d 167, for the proposition that while expert testimony that a condition could be caused by a given injury is in itself insufficient to support a finding as to causal connection, such testimony coupled with additional nonexpert testimony that claimant was not afflicted with the same condition prior to accident or injury in question is sufficient. This rule is correct. We think that the ultimate decision indicates that the commissioner recognized both the rule and the cases cited.

But where the cases cited indicate that such evidence is sufficient to sustain an award it is not meant that such evidence

compels an award. It is for the fact finder to determine the ultimate probative value of all of the evidence.

Both the deputy and the commissioner recognized the inclusive nature of the medical testimony. Such cautious medical evidence is not unusual.

"The distinction between probability and possibility should not follow too slavishly the witnesses' choice of words, as sometimes happens in respect to medical testimony. A doctor's use of such words as 'might', 'could', 'likely', 'possible' and 'may have', coupled with other credible evidence of a nonmedical character, such as a sequence of symptoms or events corroborating the opinion, is sufficient to sustain an award. It is a common experience of compensation and personal injury lawyers to find that the more distinguished a medical witness is, the more tentative and qualified are his statements on the witness stand." 2 Larson's Workmen's Compensation Law, section 80.32, page 322.

The significance of complaints and known physical condition of claimant before the lifting incident is susceptible to different inferences. It was here that the commissioner overruled his deputy. The commissioner clearly indicated that his view of the evidence justified the conclusion that the prior complaints indicated a preexistent hernia. Since he is the ultimate trier of the facts under our statutes it is his inference from this evidence which must control.

■ IV. Finally claimant predicates error on the exclusion of a letter from Dr. Ovid O. Meyer written May 7, 1962, which included the sentence: "X-Rays of your stomach in 1955, when you were here, did not show evidence of a diaphragmatic hernia." This letter was objected to for the reasons that it was immaterial and irrelevant, incompetent, hearsay, denies the right of cross-examination and was offered without proper foundation. The objection was properly sustained.

Both sides cite Hinrichs v. Davenport Locomotive Works, 203 Iowa 1395, 214 N.W. 585, where an award was affirmed where such a letter was admitted. In affirming the award the court stated that the letter was inadmissible. Affirmance came because the record contained sufficient evidence to affirm without the letter.

Defendants also cite Swim v. Central Iowa Fuel Co., 204 Iowa 546, 215 N.W. 603, where there was a reversal for failure to exclude a similar letter and there was no other evidence on the subject to support the commissioner's award.

As recognized in the foregoing cases, strict rules of evidence are not to be applied in proceedings before the industrial commissioner. None the less, some rules must apply. Where, as here, the use of such a letter would deny the right to cross-examination, the exclusion must be approved. There was no showing that the letter came under any of the recognized exceptions to the hearsay rule. There was no showing of any special circumstances that might make the letter acceptable under the statutory liberal rules of evidence criteria that applies to industrial commissioner hearings. The exclusion was correct. For the reasons herein expressed the action of the district court is—Affirmed.

All JUSTICES concur except THORNTON, J., not sitting, and STUART, J., who takes no part.