335 So.2d 269 (1976)
Mrs. Irene June JONES, Widow, On Her Own Behalf and On Behalf of Sherry Jones, et al., Petitioner,
v.
LEON COUNTY HEALTH DEPARTMENT et al., Respondents.
No. 46089.
Supreme Court of Florida.
April 7, 1976.
Rehearing Denied August 12, 1976.
*270 Steve M. Watkins, of Watkins & Hill, Tallahassee, for petitioner.
Anne C. Booth, of Hall & Booth, Tallahassee, for respondents.
ROBERTS, Justice.
We have for review by petition for writ of certiorari an order of the Industrial Relations Commission reversing the judge of industrial claims' award of benefits and dismissing the petitioner's claim.
Donald Jones, the deceased husband of petitioner, was employed by the Leon County Health Department, and, as a part of his employment, he administered their tuberculosis program. In the course and scope of his employment and as a direct result thereof, he contracted tuberculosis, which condition was diagnosed on November 10, 1972. The employer/carrier accepted this condition as compensable under the occupational disease section of the workmen's compensation law and paid benefits. Subsequently, on May 22, 1973, he died from a self-inflicted gun shot wound to the head. Petitioner, the widow of the deceased employee and the mother of their three minor children, filed a claim for death benefits on her own behalf and on behalf of her minor children. Respondent contested the claim and took the position that the death was not causally related to the injury of November 10, 1972, and that the claim should be barred by Section 440.09(3), Florida Statutes, which provides in pertinent part that no compensation shall be payable if the injury was primarily occasioned by the willful intention of the employee to injure or kill himself. The judge of industrial claims, after conducting a hearing and carefully evaluating the evidence, determined that Section 440.09(3), Florida Statutes, was not applicable. The Industrial Relations *271 Commission found that Section 440.09(3), Florida Statutes, did bar the claim and accordingly reversed and dismissed the claim.
Based on competent substantial evidence, the judge of industrial claims found that after diagnosis of his tuberculin condition, the deceased was sent to a tuberculosis hospital. He returned home and then had to be readmitted a second time. His family was tested for tuberculosis and showed a positive result and had to be put on a year's treatment which greatly upset him. For a period of time, his wife left the deceased. Upon return from the hospital, he returned to work on a part-time basis but his mental attitude had changed drastically. He lost between 40 and 50 pounds, was nervous and restless, became withdrawn, and was utterly obsessed with his illness. Specifically, the judge of industrial claims concluded, as follows:
"In the absence of tuberculosis, the claimant would not have committed suicide. I am cognizant of the fact that Dr. Bennison arrived at the same conclusion but labeled it `conjecture'. I find it is a logical conclusion to be drawn from all the evidence, including the fact that the drug INAH does have associated with it mental changes in patients who take it. The mere concern and distress of having the disease produced the depression from which he suffered. The tuberculosis resulted into a condition of depression. This condition of depression resulted in suicide. I find there is a causal connection between the tuberculosis and the suicide."
We cannot agree with the Industrial Relations Commission's determination that the evidence does not support the conclusion that the deceased was not, at the time of taking of his life, devoid of normal judgment so as to negate a willful intention to kill himself. Although the majority of the Commission recognized the marked personality change, distress, and depression visited upon the deceased as a direct result of his tuberculin condition directly arising out of and in the course of his employment, they concluded that he had the willful intent to kill himself. Chairman Carson, dissenting from the majority opined, and we concur, that in determining that the deceased had the capacity to form a willful intention to kill himself, the majority merely chose to substitute their judgment for that of the trier of fact.
As ofttimes has been stated, the purpose and intent of the Workmen's Compensation Act is to provide for the injured workmen, and in event of death caused by injuries incurred in the course and scope of employment, to provide for their dependents so that the burden will fall on the industry served and not on society. Section 440.26 (4), Florida Statutes, provides, in pertinent part:
"Presumptions.  In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary:
(1) That the claim comes within the provisions of this chapter.
* * * * * *
(4) That the injury was not occasioned by the willful intention of the injured employee to injure or kill himself or another."
Previously in the case of Whitehead v. Keene Roofing Co., et al., 43 So.2d 464 (Fla. 1949), wherein deceased who sustained serious injury as a result of a fall from a roof upon which he was working drank a deadly mixture of potash and lye, this Court was confronted with the determination as to whether the claimant was entitled to workmen's compensation benefits on account of the death of her husband who had committed suicide. Answering this question in the affirmative, this Court set out guidelines for recovery when an employee takes his life as a direct result *272 of an injury sustained in his employment and explicated, as follows:
"The difficulty inherent in proving that one who kills himself by his own hand does so because of injuries sustained in an accident, and as a direct and proximate result thereof, undoubtedly accounts for the diversity of opinion on this question among the courts of this country. And, clearly, in a proper case, the provisions of Section 440.09(3), supra, should be given full force and effect so that industry should not have to carry the burden of compensating for a death for which it was in no wise responsible. But we are not persuaded that the fact that a workman knew that he was inflicting upon himself a mortal wound will, in all cases, amount to a `wilful intention' to kill himself, within the meaning of the statute. We believe that in those cases where the injuries suffered by the deceased result in his becoming devoid of normal judgment and dominated by a disturbance of mind directly caused by his injury and its consequences, his suicide cannot be considered `wilful' within the meaning and intent of the Act.
"There is no force to the argument, propounded by some courts, that the act of suicide is an independent intervening cause of the death of the workman, thus breaking the chain of causation from the injury to the death of the deceased. While it may be an independent intervening cause in some cases, it is certainly not so in those cases where the incontrovertible evidence shows that, without the injury, there would have been no suicide; that the suicide was merely an act intervening between the injury and the death, and part of an unbroken chain of events from the injury to the death, and not a cause intervening between the injury and death. See City of Lakeland v. Burton, 147 Fla. 412, 2 So.2d 731."
The record before us contains competent substantial evidence to support a finding that without the contacting of tuberculosis, there would have been no suicide, and that the tuberculin condition of the deceased, contacted after a special association therewith for twenty years through administration of the program in his employment, caused him to become devoid of normal judgment and dominated by a disturbance of mind so as to dethrone his reason and destroy his will so that he was incapable of forming a willful intent to take his life.
Accordingly, certiorari is granted, the order of the Industrial Relations Commission is reversed, and the cause is remanded for further proceedings not inconsistent herewith.
It is so ordered.
ADKINS, SUNDBERG and HATCHETT, JJ., concur.
BOYD, J., dissents with an opinion.
OVERTON, C.J., and ENGLAND, J., dissent and concur with BOYD, J.
BOYD, Justice (dissenting).
I respectfully dissent to the majority opinion and would affirm the decision of the Industrial Relations Commission.
The majority opinion will open a floodgate of liability never contemplated by the Legislature, employers, their insurance carriers, or employees. It is true that the suicide likely resulted from despondency over the work related physical illness of the deceased. It is common knowledge that a major cause of suicide is worry over economic and work related matters. The ultimate result of this case could lead to workmen's compensation claims by families of all suicide victims on the grounds that emotional stress over their jobs caused the *273 death. How could employers refute such claims?
In the Whitehead case relied upon by the majority the deceased was in such pain physically that he lost all self-control and at the hospital reported that he had "gone nuts." There was in that case a factual question whether Whitehead was trying to relieve his pain by drinking a lethal fluid or attempting suicide. The facts in the Whitehead case and conclusions of law are not sufficiently similar to this case as to constitute a binding precedent.
If the law is to be changed to include all victims of suicide whose deaths result from work related despondency, the Legislature should make the change and it should not be accomplished by judicial construction.
I dissent.
OVERTON, C.J., and ENGLAND, J., concur.