Suzanne Williams **KOSTELAC, Appellee,**

v.

**FELDMAN'S, INC., Employer, and Great American Insurance Companies, Insurance Carrier, Appellants.**

No. 91–1755.

Supreme Court of Iowa.

March 24, 1993.

Rehearing Denied April 19, 1993.

David Shinkle, Des Moines, for appellants.

Charles T. Patterson and John C. Gray, Sioux City, for appellee.

NEUMAN, Justice.

On judicial review of agency action the district court reversed the industrial commissioner's refusal to award workers' compensation benefits to a plaintiff whose spouse committed suicide. The employer has appealed. We now reverse.

### I. *Background.*

On September 14, 1982, Dean Williams took his own life by allowing his car to run in the closed garage at his home. His wife, plaintiff Suzanne Williams, brought this action to recover workers' compensation benefits for his death. She claimed that Dean's suicide was the end result of a major depressive disorder brought on by his employment with defendant Feldman's, Inc.

The hearing before the agency revealed the following facts. Dean Williams graduated from college in 1956 with a degree in business administration and marketing. He held a series of retail sales jobs before joining Feldman's, Inc. in about 1965. During the years preceding his employment by Feldman's, Dean experienced two significant work-related events that appeared to trigger brief periods of depression. One was the failure of a retail store Dean briefly operated in Moline, Illinois. Another was the loss of his job as sales representative when his employer combined sales territories and eliminated his position.

Eventually Dean's father-in-law offered him a job at Feldman's, Inc., a family-owned clothing store in northwest Iowa. The company owned two stores, one in Storm Lake and the other in Spencer. Dean took over management of the Storm Lake store. He and Mr. Feldman worked together successfully and the businesses prospered. Dean put in long hours at the store and apparently derived a great deal of satisfaction from his work. Lay witnesses described him as cheerful, gregarious and actively involved in the community.

When Mr. Feldman died in 1973, Suzanne's mother assumed ownership of the business. Mrs. Feldman had no prior experience or training but she took an active role in the corporation. Although Dean managed both stores he tended to defer to Mrs. Feldman's judgment as the owner.

The severe downturn in the agricultural economy during the late 1970s and early 1980s had a correspondingly negative impact on retail businesses in northwest Iowa. Declining sales put Feldman's behind in its accounts payable and led to employee layoffs. The company's lines of credit dried up and it was eventually unable to purchase new merchandise. The Spencer store, which had long been a drain on the more profitable Storm Lake store, was ultimately closed over Mrs. Feldman's strong objection. Eventually the Storm Lake store also took on the appearance of a failing business.

During this period Dean became increasingly depressed. He ceased active management of the Storm Lake store, abdicating the day-to-day responsibilities to the bookkeeper. When he did come to the store he avoided contact with customers. He began sleeping a lot and consumed more alcohol than usual. He no longer expressed interest in socializing with friends.

Approximately two weeks before his death, Dean was confronted by Mrs. Feldman and her banker in an emotionally charged meeting at his home. They blamed Dean entirely for the business failure. They accused him of embarrassing the Feldman name and gave him an ultimatum to either buy the store or close it. Any attempted explanations by Dean were rudely rebuffed. Eventually he broke down. Afterward he told Suzanne that the situation was hopeless. He was fifty-two years old and felt he could not start over again. Thereafter he completely withdrew from any contact with work, friends, or family.

On September 13, Dean's mood seemed to lighten unexpectedly. He went to the store for the first time in several days, paid some bills and cleared his desk. When Suzanne left for work the next morning Dean was still asleep. She returned home at dinnertime to find him behind the wheel of his car, dead of carbon monoxide poisoning.

Three psychiatrists testified in what the industrial commissioner described as a "psychological autopsy." None of them had known Dean before his death. Based on the record sketched above, each concluded that Dean had been suffering from a major depressive disorder for some period of time before his death. All agreed that Dean's mental processes would have been adversely affected by biochemical changes accompanying the depression. The two experts who testified for Suzanne linked the depression to Dean's unshakable feeling of personal responsibility for the failure of Feldman's, Inc. They believed Dean knowingly chose suicide but his decision could not be considered intentional because it was the product of an irrational mind.

A third psychiatrist, testifying on behalf of the employer, stated that he could not

attribute Dean's major depressive disorder or his suicide to his employment without more information about the prior episodes of alleged depression and other environmental factors at work in Dean's life. He agreed that it was possible Dean's depression stemmed from his employment at Feldman's, Inc., but could not state within a reasonable degree of medical certainty that it was the probable cause. This doctor believed it was possible that Dean's mood disorder would have occurred at this time in his life irrespective of his employment or any other life activities.

From this record the industrial commissioner concluded that Suzanne failed in her burden to prove that Dean suffered an injury arising out of his employment. The commissioner further determined that, even if Dean's depression resulted from his work, recovery was barred by Iowa Code section 85.16(1) (1981) which provides:

> No compensation under this chapter shall be allowed for an injury caused:
>
> 1. By the employee's willful intent to injure himself or to willfully injure another.

On Suzanne's petition for judicial review, the district court reversed the industrial commissioner's decision. It concluded that Dean's death was the probable result of his employment and that the commissioner's contrary conclusions were arbitrary and without substantial support in the record. This appeal by the employer followed.

## II. *Scope of review.*

 Our decision is largely controlled by the limited scope of review applicable to decisions from an administrative agency. The review is for correction of errors at law, not de novo, and the findings of the industrial commissioner have the effect of a jury verdict. *Giere v. Aase Haugen Homes, Inc.*, 259 Iowa 1065, 1070, 146 N.W.2d 911, 914 (1966). The burden rested upon the claimant to show by a preponderance of evidence that the injury arose out of and in the course of employment. *Anderson v. Oscar Mayer & Co.*, 217 N.W.2d 531, 535 (Iowa 1974). "[A] possibility is insufficient; a probability is neces-

sary." *Id.* The question is whether the commissioner's decision is supported by substantial evidence in the record made before the agency. *Schreckengast v. Hammermills, Inc.*, 369 N.W.2d 809, 811 (Iowa 1985). Evidence is substantial if a reasonable mind would accept it as adequate to reach a conclusion. *John Deere Dubuque Works of Deere & Co. v. Weyant*, 442 N.W.2d 101, 105 (Iowa 1989). The possibility of drawing inconsistent conclusions from the same evidence does not mean an agency's decision lacks substantial support. *Id.* In the case of conflict in the evidence we are not free to interfere with the commissioner's findings. *Schreckengast*, 369 N.W.2d at 811. We are not bound, however, by an agency's erroneous conclusions of law. *King v. City of Mount Pleasant*, 474 N.W.2d 564, 565 (Iowa 1991).

## III. *Issues on appeal.*

The case first requires us to review under what circumstances, if any, suicide will trigger survivors' benefits under our workers' compensation law. We must then decide whether the evidence warrants the district court's reversal of the industrial commissioner's findings on causation.

A. In 1959 this court adopted the then-prevailing rule for recovery of workers' compensation benefits in the case of a traumatically induced mental injury resulting in suicide:

> Claimant having pleaded and proved suicide must get around the statutory provision that compensation shall not be allowed for an injury caused by the employee's willful intent to injure himself. To do this she must prove the mental condition of her decedent at the time of the suicidal act was such that he was motivated by an uncontrollable impulse or in a delirium of frenzy, without conscious volition to produce death.

*Schofield v. White*, 250 Iowa 571, 581, 95 N.W.2d 40, 46 (1959). The industrial commissioner applied this standard in the case before us.

In the intervening years since *Schofield*, society's heightened understanding of mental illness has prompted most jurisdictions

to move away from the doctrine's harsh reliance on proof of "uncontrollable impulse" or "delirium of frenzy." It has generally been replaced as majority rule by a chain-of-causation test in which compensability turns upon proof that an employment-related injury caused the deranged mental state which, in turn, caused the suicide. 1A A. Larson, *The Law of Workmen's Compensation* § 36.00 (1985).

We are persuaded that this shift in emphasis from proof that an employee acted in an impulsive, frenzied state to proof that but for an employment-related mental injury—however expressed—the employee would not have committed suicide, is a more sound way of dealing with the "willful injury" issue of section 85.16(1). Critics of the former rule point out that it required a claimant to prove the deceased employee met the *M'Naghten* standard of insanity, thereby mixing a criminal law concept with a civil action for survivors' benefits. *See Burnight v. Industrial Accident Comm'n*, 181 Cal.App.2d 816, 822–23, 5 Cal.Rptr. 786, 790–91 (1960); *Brenne v. Department of Indus., Labor & Human Relations*, 38 Wis.2d 84, 92, 156 N.W.2d 497, 500–01 (1968). Application of the doctrine has also tended to result in compensation for suicide committed in bizarre or violent ways ("delirium of frenzy") while denying compensation in those cases where unbearable agony breaks the will but leads undramatically to a solitary death. 1A A. Larson, *Law of Workmen's Compensation* § 36.21. Finally, the rule assumed the suicidal act was an independent, intervening cause without critically examining whether the act was in fact independent, or whether it flowed directly from the employment-related injury. *Jones v. Leon County Health Dep't*, 335 So.2d 269, 272 (Fla.1976); *State ex rel. Wyoming Workers' Compensation Div. v. Ramsey*, 839 P.2d 936, 940 (Wyo.1992); 1A A. Larson, *Law of Workmen's Compensation* § 36.30. *See generally* 15 A.L.R.3d 616, 622 (1967).

■ For all of these reasons we now join the majority of jurisdictions who permit recovery of workers' compensation benefits upon proof of a chain of causation directly linking an employment injury to a worker's "loss of normal judgment and domination by a disturbance of the mind, causing the suicide." *Ramsey*, 839 P.2d at 940; *see, e.g., Wood v. Industrial Comm'n*, 108 Ariz. 50, 492 P.2d 1157 (1972); *Beauchamp v. Workmen's Compensation Appeals Bd.*, 259 Cal.App.2d 147, 66 Cal.Rptr. 352 (1968); *Jakco Painting Contractors v. Industrial Comm'n of State of Colorado*, 702 P.2d 755 (Colo.App.1985); *Delaware Tire Ctr. v. Fox*, 411 A.2d 606 (Del.1980); *Jones*, 335 So.2d 269; *Wells v. Harrell*, 714 S.W.2d 498 (Ky.App.1986); *Meils by Meils v. Northwestern Bell Tel. Co.*, 355 N.W.2d 710 (Minn.1984); *Hall v. State Workmen's Compensation Comm'r*, 172 W.Va. 87, 303 S.E.2d 726 (1983); *Brenne*, 38 Wis.2d 84, 156 N.W.2d 497.

B. Under either the *Schofield* standard or the chain-of-causation rule we adopt today, however, the suicide must be traced directly to some injury arising out of and in the course of employment. 1A A. Larson, *Law of Workman's Compensation* at § 36.40. Application of the rule in the present case is complicated somewhat by the fact that we have not yet had occasion to rule whether mental injury, standing alone, will give rise to a claim for workers' compensation. *See Newman v. John Deere Ottumwa Works of Deere & Co.*, 372 N.W.2d 199, 203 (Iowa 1985) (declining to accept or reject the three *Larson* categories for compensable mental disability); *cf. Schofield*, 250 Iowa at 581, 95 N.W.2d at 46 (claimant proved that head injury suffered in fall at work led to decedent's suicide). Nor have we squarely faced the issue of what degree of work-related stress would justify an award of benefits in the event nontraumatic mental injury were deemed compensable. *See Schreckengast*, 369 N.W.2d at 811 (because claimant failed to establish nexus between mental illness and work, court declined to consider standard of legal causation applicable under Iowa law).

■ We need not tackle these unsettled issues, however, because resolution of the controversy turns on a more fundamental tenet of administrative law: the limitation

placed on the scope of judicial review. The district court reversed the commissioner on the question of factual causation. On that issue the commissioner found insufficient proof that Dean's major depressive disorder resulted from his employment at Feldman's, Inc. Because the record contains substantial support for the commissioner's findings, the district court's contrary ruling must be reversed.

As noted earlier in this opinion, the parties' experts were split on this question. The commissioner gave greater weight to the testimony of Dr. Taylor, the employer's expert, and furnished persuasive reasons for doing so. He credited Dr. Taylor's opinion as being more reliable, principally because it was based on more information. All three psychiatrists were, of course, hampered in their diagnosis by the fact that they had not consulted with Dean before his death. Suzanne's two experts had only based their opinions on an affidavit prepared with the help of her counsel. Both stressed the importance of non-work factors, but each was also forced to acknowledge unfamiliarity with Dean's non-work environment and lack of information concerning the cause or course of his prior history of depression. Nonetheless, both were willing to positively link Dean's depression to his employment. Dr. Taylor, on the other hand, had the benefit of reviewing Suzanne's deposition as well as the testimony of the other doctors. Given the limited availability of other pertinent information, he was unwilling to state that the nexus between Dean's mental illness and his employment was more than a possibility.

Assessing the credibility of witnesses is a role peculiarly within the realm of the fact finder. Although there was certainly evidence in this record from which the commissioner could have concluded that Dean's mental injury stemmed from his employment, the evidence was in conflict, and the commissioner drew a contrary conclusion. On judicial review, the court is bound by the agency's factual conclusions. The district court exceeded the scope of its reviewing authority by substituting its view of the evidence for the agency's. We therefore reverse.

**REVERSED.**

All justices concur except SNELL, J., who dissents; and CARTER and SCHULTZ, JJ., who concur in result only.

SNELL, Justice (dissenting).

I respectfully dissent.

The district court accurately predicted that our court would abandon the harsh rule for recovery established in *Schofield v. White*, 250 Iowa 571, 581, 95 N.W.2d 40, 46 (1959), in favor of a more realistic view of suicide cases based on a chain of causation. Applying the new rule to the facts of this case convinced the district court that recovery of workers' compensation was clearly established. I agree.

The district court reviewed this case, as do we, under the restrictions of 17A.19 of the Administrative Procedure Act. We do not make findings of fact anew but are charged with the responsibility of correcting errors at law. *Giere v. AASE Haugen Homes, Inc.*, 259 Iowa 1065, 1070, 146 N.W.2d 911, 914 (1966). For this reason, we are not bound by an agency's erroneous conclusions of law. *King v. City of Mount Pleasant*, 474 N.W.2d 564, 565 (Iowa 1991).

The Industrial Commissioner decided this case applying the law of *Schofield*, which the majority now decides is not the law and does not apply. Notwithstanding, the majority affirms the Industrial Commissioner's decision that denies recovery on the ground that we are bound by the Commissioner's finding of no factual causation. It is here the majority's analysis goes awry.

There is no dispute on what the facts are in this case. Only the legal conclusion to be drawn from the facts is in question. The Commissioner concluded that the suicide was not work related and therefore not compensable. He based that result on his view that Dr. Taylor's opinion was more believable than the opinions of Dr. Kjenaas and Dr. Barnett. Of course, the Commissioner's conclusion here is a conclusion of law, not a finding of fact to which we are bound. None of the doctors had talked to

Dean Williams and were testifying from hearsay as to the probability that his suicide arose out of his employment. There was no factual dispute for the Commissioner to resolve. *See Schreckengast v. Hammermills, Inc.,* 369 N.W.2d 809, 810–11 (Iowa 1985).

In applying *Schofield* erroneously, the Commissioner made his findings and legal conclusions looking for a suicidal act motivated by an uncontrollable impulse or a delirium of frenzy. In so doing, how can it be said that when neither of these conditions is found, that neither could it be found that there was a "chain of causation" linking the employment injury to Williams' "loss of normal judgment and domination by a disturbance of the mind, causing the suicide"? I submit it cannot. The Commissioner's decision based on the wrong law has no preclusive effect on the issue to be answered under the right law.

Even under the discredited law of *Schofield,* the Commissioner's decision is unsupportable. We review to see if the agency decision is supported by substantial evidence in the record made before the agency when that record is viewed as a whole. Iowa Code § 17A.19(8)(f). The Commissioner based his decision not only on evidence that fails to meet this standard, but worse, is woefully weak. The evidence relied upon is Dr. Taylor's opinion testimony which is totally based on hearsay. Moreover, it is vacuous because Dr. Taylor did not say that the suicide was not work related. Here is not an opinion lacking absolute certainty but a statement without probative substance. *See Sondag v. Ferris Hardware,* 220 N.W.2d 903, 907 (Iowa 1974); *see also Auxier v. Woodward State Hosp. Sch.,* 266 N.W.2d 139, 144 (Iowa 1978). Two other psychiatrists testified that it was work related because of depression linked to Williams' unshakable feeling of personal responsibility for the failure of the store he managed. The record "as a whole" shows two qualified doctors who said the suicide injury to Williams was work related and one who could not say. The fact that the one who could not say felt he needed more information does not

elevate the value of his testimony a single degree.

The evidence was not in conflict; rather a choice appears between facts and opinion supporting a work-related cause and an opinion that equivocates without any evidence to indicate the suicide was from some other cause. The evidence is substantial not to support the Commissioner's decision but to reject it.

The substantial evidence standard to prove that Williams' suicide arose out of and in the course of his employment is actually abundantly met by plaintiff. The recitation of the undisputed facts in the majority's opinion is itself persuasive. The record also discloses that Williams uncharacteristically did not make any purchasing trips or buy new merchandise for the 1982 season. He was urged by his wife to seek professional help for his depression during the last few weeks of his life, but he declined to do so. Williams had a terrible fear of ending up like his father whom he viewed as a failure. No cause for his suicide other than his work-related problems appears in this record. The rejection of this abundance of evidence in favor of the statement that some unnamed, unknown cause might have accounted for Williams' death casts a death pall over the chance that any claimant for workers' compensation benefits in a suicide case will ever succeed.

The more enlightened rule now embraced by the majority will, in reality, be a mirage, no more realistic or compassionate than the *Schofield* rule. The door to benefits for the family of an injured worker will slam shut just as tightly.

An error of law was made by the Industrial Commissioner in following law now held to be inapplicable and in reaching a result unsupported by substantial evidence. *See* Iowa Code § 17A.19(8)(e) and (f). Remand on the legal issue is not necessary because we can correct any error of law. *Dillinger v. City of Sioux City,* 368 N.W.2d 176, 182 (Iowa 1985). In a law action we may also interfere when findings are undisputed or no conflicting inferences may be drawn from them. *Beneficial Fi-*

*nance Co. of Waterloo v. Lamos,* 179 N.W.2d 573, 578 (Iowa 1970). The Commissioner's decision also violates section 17A.19(8)(g) in being arbitrary and characterized by an abuse of discretion. I would affirm the trial court and remand to the Industrial Commissioner for a determination of benefits. At the least, I would remand to the Commissioner to apply the proper rule as now held by the majority, *see Sondag,* 220 N.W.2d at 908, although I believe doing that would be a redundancy.