**Dorothy BLANCHARD, Widow of Beryle M. Blanchard, Employee, Appellant,**

v.

**BELLE PLAINE/VINTON MOTOR SUPPLY COMPANY and The Cincinnati Insurance Co., Appellees.**

No. 98–0038.

Court of Appeals of Iowa.

April 30, 1999.

John M. Bickel and Nancy J. Penner of Shuttleworth & Ingersoll, P.C., Cedar Rapids, for appellant.

J. Richard Johnson and Ann M. Cisco of White & Johnson, P.C., Cedar Rapids, for appellees.

Heard by STREIT, P.J., and VOGEL and ZIMMER, JJ.

VOGEL, J.

Dorothy Blanchard appeals a district court ruling on judicial review affirming the industrial commissioner's decision to deny a worker's compensation claim stemming from the suicide of her husband. We affirm.

***Background facts.*** On March 28, 1993, Beryle Blanchard fatally shot himself in the warehouse of the Belle Plaine/Vinton Motor Supply Company. The company was a family business which was started by Beryle's father and uncle in the 1940s. Beryle had been employed at the company his entire working life. At the time of his death, he owned two-thirds of the business and was chief executive officer and president of the company.

In June of 1994, Dorothy filed a petition for workers' compensation benefits related to Beryle's death. Following a hearing, the deputy industrial commissioner denied her claim. The industrial commissioner affirmed the deputy's decision and Dorothy petitioned for judicial review. In December of 1997, the district court filed an order affirming the agency decision. Dorothy now appeals.

■ ***Scope of review.*** We review a district court's ruling on judicial review for correction of errors of law. *See Bergen v. Iowa Veterans Home,* 577 N.W.2d 629, 630 (Iowa 1998) (citation omitted). In determining whether the law has been correctly applied, we give weight to the commissioner's interpretation of the relevant statutory provisions, but are not bound by it. *Second Injury Fund v. Klebs,* 539 N.W.2d 178, 180 (Iowa 1995).

■ ***I. Discovery compliance.*** Dorothy first contends that she was significantly prejudiced by the late disclosure of the defendants' experts and their opinions. She specifically asserts that she was unfairly surprised by the disclosure of the defense theory only one month before the hearing. Dorothy concludes that the deputy commissioner abused its discretion in failing to grant a continuance of the hearing or exclude those experts from testifying.

■ Unless there is a conflict with the administrative rules and Iowa Code Chapters 85–87 and 17A, the Iowa Rules of Civil Procedure apply to actions before an agency. *See* Iowa Admin. Code 343–35(86). Iowa Rule of Civil Procedure 125(c) provides that:

If a party expects to call an expert witness when the identity or the substance of such expert witness' testimony has not been previously disclosed in response to an appropriate inquiry directly addressed to these matters, or when the substance of an expert's testimony has been updated, revised or changed since the response, such response must be supplemented to include the information described in subdivisions (a)(1)(A)-(C) of this rule, *as soon as practicable, but in no event less than thirty days prior to the beginning of trial except* on leave of court. If the identity of an expert witness and the information described in subdivisions (a)(1)(A)-(C) are not disclosed or supplemented in compliance with this rule, the court in its discretion may exclude or limit the testimony of such expert, or make such orders in regard to the nondisclosure as are just.

(Emphasis added). Even when a party discloses their expert opinions within the thirty-day rule, there can still be a violation of rule 125(c) for failing to disclose the opinions "as soon as practicable." *See Stephenson v. Furnas Elec. Co.,* 522 N.W.2d 828, 832 (Iowa 1994). We review the decision to grant or deny a continuance for abuse of discretion. *See Id.* at 831; *Ragan v. Petersen,* 569 N.W.2d 390, 392–93 (Iowa App.1997).

The hearing before the deputy commissioner in this case was scheduled for November 27, 1995. Defendants served their expert's opinions by mail on October 20th (Dr. Taylor) and 24th (Dr. Winokur). Although these opinions were provided more than thirty days in advance of the hearing,

Dorothy contends that this was a clear violation of the "as soon as practicable" requirement because defendants had contacted Dr. Taylor as early as October of 1994.[1] However, defendants assert that they complied with the discovery deadlines set by the deputy in the hearing assignment order. That order stated that the case preparation completion dates outlined within superseded Iowa Rule of Civil Procedure 125(c) and further provided that continuances would only be granted in the case of an emergency. Furthermore, the defendant's experts could not provide their opinions until they had reviewed the deposition testimony from lay witnesses and Beryle Blanchard's treating internists, and those depositions were not taken until September 19, 1995. Moreover, while Dorothy was not aware of the specific cause of depression which would be forwarded by the defense experts, she cannot claim that she was surprised by their disclosure. The cause of Beryle's depression, whether work-related or not, was the critical issue of this litigation and had been contested since the defendants filed their answer. Finally, there was sufficient time between the disclosure and the hearing for Dorothy to schedule depositions and rebut the defense opinions. In fact, depositions were taken of all three of Dorothy's experts and Dr. Winokur following the defense disclosure. After reviewing all of the arguments forwarded on this issue, we conclude that there was no abuse of discretion by the deputy in denying the continuance.

■ *II. Substantial evidence.* Dorothy contends that substantial evidence does not support the rejection of her claim. The agency found, as did the district court on judicial review, that Dorothy's claim must fail because she failed to prove both medical and legal causation. We review a district court's ruling on judicial review for correction of errors of law. *See Bergen,* 577 N.W.2d at 630. We are bound by the

---

1. There is no evidence in the record as to when Dr. Taylor was actually retained by defendants.

commissioner's factual findings if they are supported by substantial evidence in the record. *Klebs*, 539 N.W.2d at 180.

**A. Compensable mental injuries.** Employees covered under Chapter 85 of the Iowa Code are entitled to compensation for any and all personal injuries which arise out of and in the course of employment. *See* Iowa Code § 85.3(1). Iowa first considered whether workers' compensation benefits were recoverable for an employee's death by suicide in *Kostelac v. Feldman's, Inc.*, 497 N.W.2d 853 (Iowa 1993). In *Kostelac*, the claimant's husband had been the manager of two retail stores which declined in the midst of a depressed economy. *Id.* at 855. In an emotional confrontation, the owner and her banker blamed the decline on the manager, who then sank into a depression and committed suicide a short time later. *Id.* Although the claimant in *Kostelac* failed to meet her burden, the Iowa Supreme Court held that survivor benefits would be granted "upon proof of a chain of causation directly linking an employment injury to a worker's 'loss of normal judgment and domination by a disturbance of the mind, causing the suicide.' " *See Id.* at 857 (quoting *State ex rel. Wyoming Workers' Compensation Div. v. Ramsey*, 839 P.2d 936, 940 (Wyo. 1992)).

However, the court stated that the application of its ruling in *Kostelac* was complicated by the fact that it did not address the issue of whether a mental injury, standing alone, could give rise to a claim for workers' compensation benefits. *See Id.* at 857. The court finally addressed this issue in *Dunlavey v. Economy Fire and Casualty Co.*, 526 N.W.2d 845 (Iowa 1995). In *Dunlavey*, an insurance claims adjustor filed a claim for workers' compensation for a psychological injury caused by stress in his work environment. *See Dunlavey*, 526 N.W.2d at 848. The claimant

asserted that the changes he experienced at work due to his employer's merger and reorganization had caused his depression and made him unable to return to work. *Id.* at 847–48. The court determined that a mental injury would be compensable upon a showing of both medical and legal causation. *Id.* at 853 (citations omitted).[2]

■ **B. Medical causation.** Medical or factual causation is found where the employee's mental injury is shown to be causally connected to his employment. *See Id.* All parties agree that Beryle Blanchard was suffering from depression at the time of his death, and that his depression led him to commit suicide. The fighting question before the commissioner was whether Beryle's depression was endogenous[3] or a situational depression arising out of his work environment.

■ Five lay witnesses and five doctors testified at the initial hearing as to the cause of Beryle Blanchard's depression. The lay witnesses testified as to the stress Beryle suffered in relation to the pending sale of the family business and his corresponding change in behavior. Drs. Questch and McIntosh, internists who treated Beryle prior to his death, both opined that work-related stress caused Beryle's depression and his resulting suicide. Three non-treating psychiatrists also testified. Dr. Hansen testified that Beryle's depression was a situational one arising out of his work. Drs. Taylor and Winokur, however, testified that they believed Beryle's depression to be endogenous. After reviewing the lay testimony, they testified that the timing of Beryle's depressive symptoms clearly preceded any stress he may have felt from the pending sale. They noted how Beryle, who had originally been enthusiastic and confident about the

---

**2.** The court found that the claimant proved medical causation and remanded for application of the legal causation test. *See Dunlavey*, 526 N.W.2d at 853, 858.

**3.** Endogenous depression was described as a depression that comes from within an individual and not from the environment.

sale, developed an irrational, almost ·delusional, fear about the sale and could not be · assuaged. Drs. Taylor and Winokur testified that this sort of obsessive behavior and Beryle's terminal insomnia were not symptoms indicative of a situationally-induced depression. Dr. Winokur further testified that Beryle's own medical history revealed symptoms which suggested that he had previously suffered from depressive episodes in 1976 and 1991.

 Lay testimony can buttress the medical testimony and be relevant and material in determining the cause and extent of an employee's injuries. *See Miller v. Lauridsen Foods, Inc.*, 525 N.W.2d 417, 421 (Iowa 1994). The commissioner is required to consider both medical and non-medical evidence. *See Id.* However, whether an injury has a direct causal connection with the employment or arose independently thereof is essentially within the domain of expert testimony. *See Dunlavey*, 526 N.W.2d at 853.

After considering all relevant evidence, the commissioner found the opinions of Drs. Winokur and Taylor to be more persuasive than that of Dr. Hansen and ruled that Dorothy had failed to establish medical causation. Again, in our review, the question is not whether the evidence supports a finding different from the commissioner's but whether the evidence supports the findings the commissioner actually made. *See Long v. Roberts Dairy Co.*, 528 N.W.2d 122, 123 (Iowa 1995) (citing *Ward v. Iowa Dep't of Transp.*, 304 N.W.2d 236, 237 (Iowa 1981)). We find the Commissioner's ruling to be supported by substantial evidence in the record and therefore must uphold that finding.

 *C. Legal causation.* In rejecting Dorothy's claim, the commissioner additionally found that Dorothy had failed to establish legal causation. Legal causation is established where an employee shows that the mental injury was caused by workplace stress of greater magnitude than the day-to-day mental stresses experienced by other workers employed in the same or similar jobs. *See Dunlavey*, 526 N.W.2d at 855. Dorothy asserts that the legal causation test adopted in *Dunlavey* should not apply because this was not a case in which a mental stimulus caused a mental injury (as in *Dunlavey*), but rather one in which a mental stimulus allegedly caused a suicide. However, we would characterize this situation as one in which a mental stimulus allegedly caused a mental injury (depression), which then resulted in a suicide. We interpret *Dunlavey* to mean that regardless of the manifestation of the mental injury, be it suicide or some form of mental impairment, the same proof, both medical and legal causation, is required. Dorothy alternatively argues that the fear of fraud which prompted the adoption of an objective legal causation test in *Dunlavey* is not present when the mental injury results in a suicide, and therefore the test should not be applied. However, the fear of fraud was not the only reason for the adoption of an objective legal causation test. *See Id.* at 856–58. Again, we believe that this test is applicable regardless of how the mental injury manifests itself.

 Even if the legal causation test is applicable, Dorothy nevertheless asserts that she met her burden of proof. As Beryle was in a somewhat unique position as the president and CEO of this family business, it was difficult for Dorothy to prove legal causation. The only evidence offered on this point was the testimony of the other management team members, including Beryle's nephew, a part owner. While they were not in precisely the same position as Beryle, none of these witnesses testified that the stress they experienced as a result of the sale caused them to become depressed or obsessed with the idea that the sale would fall through. Rather, they all testified that Beryle's ap-

prehensions and refusal to be reassured seemed unreasonable to them. We conclude that there is substantial evidence to support the commissioner's finding that Dorothy failed to establish legal causation.

Having considered all other arguments asserted, we hereby affirm the district court ruling affirming the agency on judicial review.

**AFFIRMED.**