# IN THE COURT OF APPEALS OF IOWA

No. 14-0336
Filed October 15, 2014

**EMCO and OLD REPUBLIC INSURANCE COMPANY,**
    Plaintiffs-Appellants,

**vs.**

**AVDULAH SEHIC,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Michael D. Huppert, Judge.

EMCO appeals from the district court's order affirming the Iowa Workers' Compensation Commissioner's award of thirty-five percent industrial disability to Avdulah Sehic. **AFFIRMED.**

Timothy W. Wegman and Joseph M. Barron of Peddicord, Wharton, Spencer, Hook, Barron & Wegman, L.L.P., West Des Moines, for appellants.

Adnan Mahmutagic of Beecher, Field, Walker, Morris, Hoffman & Johnson, P.C., Waterloo, for appellee.

Considered by Danilson, C.J., and Vogel and Bower, JJ.

**VOGEL, J.**

EMCO appeals from the district court's order affirming the Iowa Workers' Compensation Commissioner's award of thirty-five percent industrial disability to Avdulah Sehic, claiming the award is not supported by substantial evidence. Because we conclude there is some evidence in the record showing Sehic sustained a work injury that caused a disability, we affirm the decision of the district court.

**I. Factual and Procedural Background**

Sehic was born in Bosnia and came to the United States in 1999. He was sixty-three at the time of the hearing, and had worked at EMCO making door and window frames since June 7, 1999. He did not complete any education in the United States and speaks only limited English. On August 17, 2010, Sehic sustained an injury to his neck and lower back after falling while carrying a door frame from one machine to another. He stated he did not remember how he fell or what happened but that he did lose consciousness.

The record contains several reports from a number of different examining and treating doctors regarding Sehic's injury and subsequent disability. On August 18, 2010, Sehic was examined by Anandeep Kumar, M.D., whose report stated Sehic had lower back pain. The second report, dated August 24, noted Sehic also reported pain in his mid-back and cervical spine, and he had shooting pain radiating upwards that made him dizzy, as well as numbness and tingling in both upper and lower extremities. Dr. Kumar's report also stated: "In addition to physical impairments, [Sehic] does demonstrate psychological barriers to recovery including anxiety and depression, and these are provocative of

subjective pain perceptions. He may benefit from ongoing counseling sessions." On several occasions Sehic informed Dr. Kumar he wanted to be taken off work completely, to take advantage of earned sick days. In his subsequent examinations, Dr. Kumar noted Sehic was not always compliant with taking his medications or consistently attending physical therapy.

On October 27, 2010, Sehic was examined by M.S. Iqbal, M.D., with the aid of an interpreter. Dr. Iqbal diagnosed Sehic with myofascial pain syndrome lumbar, thoracic and cervical spine; lumbar radicular pain; and dizziness, etiology unknown. He performed various trigger point injections at that time as well as on December 16. On February 28, 2011, Dr. Iqbal reported: "I could not find any objective evidence to support any need for permanent work restrictions or permanent functional impairment pursuant to AMA Guidelines, 5th Edition. I do not see any objective reason for further medical treatment for the alleged work related injury of August 17, 2010."

Steven Adelman, D.O., a neurologist, examined Sehic on November 1, 2010. Dr. Adelman's report stated:

> Mr. Sehic presents as a 61-year-old gentleman who suffered a work-related injury in mid August when he fell and subsequently has had low back pain, neck pain, headache, and dizziness. His neurologic examination is normal as are the MRIs of his cervical and lumbar spine. Clinically, I suspect we are dealing with musculoskeletal lumbar and cervical pain along with tension-type headaches. His vertigo is fairly nonspecific in nature. Certainly, I do not believe that he has suffered an intracranial lesion. I suspect he may have some degree of vestibular dysfunction . . . . Obviously, his symptoms are subjective in nature. I see nothing that would suggest that he will have any permanent impairment from his work-related accident.

David Boarini, D.O., performed an independent medical examination (IME) on February 2, 2011, and in his report dated February 15, asserted Sehic's:

> [M]ain difficulty at the present time is back pain, although he has some neck pain. He has an extremely positive review of symptoms, which would be consistent with no possible physical finding and is strongly suggestive of psychological difficulties or symptom exaggeration.
>
> . . . .
>
> I reviewed the patient's MRI scans of the entire spine. They show some minimal degenerative changes in the neck and back consistent with his age but no sign of anything unusual, significant, or traumatically related. This patient has simple myofascial pain from a rather nonspecific injury. He has signs of symptom exaggeration, as noted above. I don't find any physical basis for the patient's ongoing difficulties. I don't see anything that should keep him from returning to normal activities and do not find anything upon which to base an impairment rating.

Arnold Delbridge, D.O., performed another IME on April 28, 2011, and found no evidence of impairment regarding Sehic's neck. His report opined:

> In summary, Mr. Sehic had a fall at work. He was examined shortly thereafter by the nurse and by Dr. Kumar and was found to have specific findings related to the fall which are reasonably consistent with the history. Mr. Sehic was noted by different examiners to have limited range of motion and has continued to have limitation of motion in the cervical and lumbar spine in particular. He did not respond well to medications, trigger point injections, or physical therapy.

Dr. Delbridge further noted:

> There does appear to be some effort on [Sehic's] part to convince me that he was injured; however, he has had physical findings with a fall as he describes immediately after the injury which persist to the present time; most particularly of limited motion of the cervical and lumbar spine.

Consequently, Dr. Delbridge assigned a five percent whole-body impairment rating and placed restrictions on lifting heavy objects from the floor, repeated twisting of the head or body, and a lift-restriction of no more than forty pounds.

On August 24, 2012, Sunil Bansal, M.D., performed another IME and found Sehic's lumbar back and cervical neck symptoms were caused by his work injury. In the examination Sehic reported a six out of ten on a pain scale, with the pain increasing to seven or eight after activity or when the medication wore off. Dr. Bansal's report stated:

> It is implausible that [Sehic] would have been able to perform the above duties on a sustained basis with his current lumbar back and cervical neck pathological state. Thus, from both a chronological and mechanistic standpoint it is clear that his back pathology is related to his work injury on 8/17/2010.

Dr. Bansal assigned Sehic a twelve-percent whole body impairment rating, advising that Sehic not lift more than twenty pounds frequently and forty pounds occasionally. Dr. Bansal placed Sehic at MMI as of August 24, 2012.

Scott Neff, D.O., performed another IME on October 22, 2012. He noted Sehic's x-rays only showed degeneration consistent with Sehic's age as well as an exaggerated pain response. He found no evidence demonstrating an injury to Sehic's lower back. He did not have any recommendations for further treatment. Sehic was also seen at Broadlawns Medical Center on several different occasions with complaints of pain in his back and neck.

Sehic continued to work at EMCO after his injury in a position designed to accommodate his medical restrictions. However, EMCO terminated Sehic on June 9, 2011, based on Sehic's refusal to perform his work duties. Sehic claimed the type of work was not properly within his medical restrictions, despite EMCO's assessment that the new work activities accommodated Sehic's disability. Sehic applied for unemployment benefits but was ultimately denied.

On November 23, 2011, Sehic filed a petition with the Iowa Workers' Compensation Commissioner. A hearing was held and Sehic was awarded 175 weeks of permanent partial disability benefits, with a finding he suffered a thirty-five percent industrial disability. The commissioner affirmed the decision without additional analysis. The district court, after aptly noting it was not in a position to reweigh the competing medical testimony, issued a decision on February 12, 2014, affirming the commissioner. EMCO appeals.

## II. Standard of Review

Under Iowa Code section 17A.19 (2013), our review of agency action is to determine whether our conclusions are the same as those of the district court. *Stephenson v. Furnas Elec. Co.*, 522 N.W.2d 828, 831 (Iowa 1994). "The district court may grant relief if the agency action has prejudiced the substantial rights of the petitioner, and the agency action meets one of the enumerated criteria contained in section 17A.19(10)(a) through (n)." *Renda v. Iowa Civil Rights Comm'n*, 784 N.W.2d 8, 10 (Iowa 2010). Reviewing the record as a whole, we may reverse, modify, affirm, or remand to the agency for further proceedings if the agency's factual findings are not supported by substantial evidence, or its application of law to the facts is irrational, illogical, or wholly unjustifiable. *Westling v. Hormel Foods Corp.*, 810 N.W.2d 247, 251 (Iowa 2012); *Second Injury Fund v. Nelson*, 544 N.W.2d 258, 264 (Iowa 1995).

Evidence is substantial if a reasonable mind would accept it as adequate to reach the conclusion at issue. *Suluki v. Emp't. Appeal Bd.*, 503 N.W.2d 402, 404 (Iowa 1993). The mere fact that we could draw different conclusions from the same evidence does not mean substantial evidence does not support the

commissioner's findings. *Kostelac v. Feldman's, Inc.*, 497 N.W.2d 853, 856 (Iowa 1993). Thus, the ultimate question is not whether the evidence supports a different finding, but whether it supports the findings the commissioner actually made. *Reed v. Iowa Dep't of Transp.*, 478 N.W.2d 844, 846 (Iowa 1991).

## III. Industrial Disability Award

EMCO claims because there were numerous medical opinions stating Sehic did not suffer a disability, and the deputy commissioner found Sehic's testimony unreliable, substantial evidence does not support the commissioner's award of thirty-five percent industrial disability.

The decision awarding benefits stated:

> Since his fall at work, claimant has consistently complained of significant symptoms in his neck, back and dizziness. The medical evidence is consistent that MRIs and x-rays do not show any significant findings which would account for the level of claimant's pain.
> . . . .
> The record shows claimant has symptoms, which appear to be exaggerated when he has been examined. There have been a number of suggestions that claimant may have psychological difficulties. There is no evidence that any psychological evaluation took place. The claimant has exhibited symptoms out of proportion to the objective medical evidence. However, as noted by Dr. Delbridge in his April 28, 2011 IME:
> "In summary, Mr. Sehic had a fall at work. He was examined shortly thereafter by the nurse and by Dr. Kumar and was found to have specific findings related to the fall which are reasonably consistent with the history. Mr. Sehic was noted by different examiners to have limited range of motion and has continued to have limitation of motion in the cervical and lumbar spine in particular."
> I find Dr. Delbridge's opinions to be the most convincing of the IMEs and medical opinions in this case. Dr. Iqbal found claimant had myofascial pain syndrome lumbar, thoracic and cervical spine, Dr. Boarini found claimant had simple myofascial pain. Dr. Simon noted evidence of myofascial pain or spasms. Broadlawns noted claimant had chronic neck and back pain. Dr. Bansal found the claimant had back pathology related to his work.

. . . .

Dr. Neff did not find claimant had any work injury. He attributed claimant's condition to degenerative disease of the cervical, thoracic and lumbar spine. Dr. Neff's opinion is not convincing. It does not adequately explain the fact that claimant was essentially symptom free before his fall at work in August 2010 and has had chronic back pain since that date. It is true no MRI has shown significant results. It is also true the claimant consistently sought treatment for back and neck symptoms since his fall.

The deputy then found, due to Sehic's limited education and ability to speak English, that he had suffered a thirty-five percent industrial disability as a result of his work injury.

Our court is bound by the rule that "[o]ur analysis is shaped largely by the deference we are statutorily obligated to afford the commissioner's findings of fact." *Mike Brooks, Inc. v. House*, 843 N.W.2d 885, 889 (Iowa 2014). However attenuated from the weight of the evidence the commissioner's decision may be, as long as there is some evidence supporting the conclusion, we must affirm the commissioner. *See id.* at 889–90; *Arndt v. City of Le Claire*, 728 N.W.2d 389, 394 (Iowa 2007) ("Making a determination as to whether evidence 'trumps' other evidence or whether one piece of evidence is 'qualitatively weaker' than another piece of evidence is not an assessment for the district court or the court of appeals to make . . . ."). Due to the opinion of Dr. Delbridge, who was found to "be the most convincing" among the medical opinions, there is some evidence supporting the causal connection between Sehic's injury and his reported disability. Consequently, despite the deputy's own finding that Sehic was not credible, as well as the majority of the doctors who concluded Sehic was not suffering from a permanent disability, we must conclude substantial evidence

supports the commissioner's decision. *See Kostelac v. Feldman's, Inc.*, 497 N.W.2d 853, 856 (Iowa 1993) ("In the case of conflict in the evidence we are not free to interfere with the commissioner's findings."). We therefore affirm the decision of the district court, which affirmed the commissioner.

**AFFIRMED.**